******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* DEAN BRIAN LEBLANC
(AC 34814)

Beach, Robinson and Sheldon, Js.*

*Argued December 9, 2013—officially released March 4, 2014*

(Appeal from Superior Court, judicial district of Hartford, geographical area number twelve, C. Taylor, J.)

*Laila Haswell*, assistant public defender, for the appellant (defendant).

*Emily D. Trudeau*, special deputy assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, *Adam B. Scott*, supervisory assistant state's attorney, and *Alexander Beck*, deputy assistant state's attorney, for the appellee (state).

*Opinion*

SHELDON, J. The defendant, Dean Brian LeBlanc, appeals from the judgment of conviction rendered against him after a jury trial on charges of operating a motor vehicle while under the influence of alcohol in violation of General Statutes § 14-227a (a) (1) and operating a motor vehicle while having an elevated blood alcohol content in violation of § 14-227a (a) (2). The defendant claims that the trial court erred in denying his motion to suppress evidence regarding his refusal to perform a field sobriety test and that, in admitting evidence of his refusal, the court violated his constitutional privilege against self-incrimination. We conclude that even if the challenged evidence was improperly admitted, its admission was harmless beyond a reasonable doubt. Accordingly, we affirm the judgment of the trial court.

On the basis of the testimony and evidence adduced at trial, the jury reasonably could have found the following facts. On March 22, 2010, Demetria Jackson was sitting in her car in the parking lot of a strip mall in South Windsor, waiting to pick up a take-out order that she had placed with a restaurant in that plaza. When she exited her vehicle, the defendant walked out of the adjacent bar and, as he walked to his vehicle, he uttered an incomprehensible comment. Jackson ignored the defendant and continued into the restaurant to retrieve her order, while the defendant proceeded toward the door of the vehicle parked next to hers.

When Jackson returned to her car, she observed the defendant still standing next to his vehicle. She smelled a strong odor of alcohol and observed that the defendant was having difficulty inserting his key into the door lock of his vehicle. Jackson drove away, stopping at a point nearby to further observe the defendant. Concerned that the defendant was about to drive a vehicle while intoxicated, Jackson called 911. While on the telephone, she observed the defendant start his vehicle and begin to drive. She testified that he was not operating the vehicle in "a steady movement, but almost like someone was stepping on the gas and then stepping on the brake." The defendant continued operating the vehicle, as if attempting to get to the exit of the parking lot, but he "kept turning back around as if he couldn't make his way toward the exit . . . almost like the motion that a figure eight would make." Jackson testified that the defendant "continued sort of driving . . . as if he were trying to find the exit or just driving in the parking lot" until another man exited the bar and approached the defendant's vehicle. The defendant stopped and parked his vehicle, and began to converse with the other man until police Officer Kevin Geraci arrived.

Upon his arrival at the scene, Geraci noticed that

the defendant's vehicle was parked crookedly, with its brake lights on. Geraci activated the emergency lights on his patrol car, exited the car, and approached the defendant's vehicle. As he approached, the defendant's brake lights went off. Geraci first asked the other man who had been speaking with the defendant if he had been driving. The man stated that he had not been driving and walked away. Thereafter, when Geraci walked up to the window of the defendant's vehicle, the defendant immediately declared, "I wasn't driving. The keys weren't in the ignition." At that point, Geraci had not yet asked the defendant anything. Geraci smelled a strong odor of alcohol emanating from the defendant's vehicle, and therefore asked the defendant for his driver's license and vehicle registration. The defendant responded, "Why? I wasn't driving." Geraci repeated the same request to the defendant about one-half dozen times, to which, on each occasion, the defendant repeated the same response.

Eventually, Geraci told the defendant to get out of his vehicle. After the defendant complied with this order, Geraci conducted what he described as "a weapon's patdown [of the defendant] for safety purposes."[1] In so doing, Geraci could smell the strong odor of alcohol on the defendant's breath, and thus asked him to take a field sobriety test. In response, the defendant told Geraci that he was not driving because he was drunk. The defendant repeated that he was not driving three or four times, and further told Geraci that he "never left— never drove off the parking lot." Geraci interpreted the defendant's responses as a refusal to take the field sobriety test, and therefore placed the defendant under arrest. Two chemical alcohol tests were later administered on the defendant, which produced blood alcohol levels of 0.172 and 0.17, respectively. The defendant was charged with operating a motor vehicle while under the influence of alcohol in violation of § 14-227a (a) (1) and operating a motor vehicle while having an elevated blood alcohol content in violation of § 14-227a (a) (2).

Prior to trial, on October 17, 2011, the defendant filed a motion in limine seeking to suppress evidence of the fact that he had refused to take a field sobriety test. On March 16, 2012, during the trial, the court excused the jury and held a hearing on the defendant's motion. The sole witness at the hearing was Geraci, who testified to his interaction with the defendant that led to the defendant's arrest. His testimony regarding that interaction was not contested by the defendant in terms of its factual accuracy. During oral argument on his motion to suppress, the defendant expanded the scope of his motion to include a challenge to his earlier statement that he had not been driving. The defendant challenged the admissibility of his refusal to take the field sobriety test on the legal ground that his refusal and his statements were testimonial in nature and were

compelled by Geraci, and thus its admission violated his constitutional privilege against self-incrimination. The court denied the defendant's motion and the trial proceeded.

The defendant was convicted of both charges of operating under the influence. Following the conviction, the state filed a part B information charging the defendant as a subsequent offender in violation of § 14-227a (g) (2), to which the defendant entered a plea of nolo contendere. The trial court merged the two operating under the influence counts and sentenced the defendant to two years incarceration, execution suspended after 450 days, and three years probation. After trial, the defendant sought an articulation of the trial court's decision denying his motion to suppress. In response, the court issued an articulation in which it concluded that the defendant's refusal to take a field sobriety test was neither compelled nor testimonial. This appeal followed.

The defendant claims that the trial court erred in not suppressing the following: Geraci's testimony that the defendant had refused to perform a field sobriety test; the defendant's statement, "Why? I wasn't driving," in response to Geraci's request that he perform a field sobriety test; and his subsequent admission to Geraci that he was drunk. The defendant claims that the evidence was improperly admitted because it was testimonial and compelled, and thus obtained in violation of his constitutional privilege against self-incrimination. The state disagrees with the defendant, arguing that the challenged evidence was neither testimonial nor compelled. It further contends that even if the evidence was inadmissible, any error in admitting it into evidence was harmless beyond a reasonable doubt. We agree with the state that any error by the trial court in admitting the challenged evidence was harmless beyond a reasonable doubt.

"[W]hen an improper evidentiary ruling is not constitutional in nature, the defendant bears the burden of demonstrating that the error was harmful. . . . [W]hether [the improper admission of a witness' testimony] is harmless in a particular case depends upon a number of factors, such as the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. . . . Most importantly, we must examine the impact of the [improperly admitted] evidence on the trier of fact and the result of the trial. . . . [T]he proper standard for determining whether an erroneous evidentiary ruling is harmless should be whether the jury's verdict was substantially swayed by the error. . . . Accordingly, a

nonconstitutional error is harmless when an appellate court has a fair assurance that the error did not substantially affect the verdict. . . . The harmless error doctrine is rooted in the fundamental purpose of the criminal justice system, namely, to convict the guilty and acquit the innocent. . . . Therefore, whether an error is harmful depends on its impact on the trier of fact and the result of the case. . . . This court has held in a number of cases that when there is independent overwhelming evidence of guilt, a constitutional error would be rendered harmless beyond a reasonable doubt. . . . When an [evidentiary] impropriety is of constitutional proportions, the state bears the burden of proving that the error was harmless beyond a reasonable doubt. . . . [W]e must examine the impact of the evidence on the trier of fact and the result of the trial. . . . If the evidence may have had a tendency to influence the judgment of the jury, it cannot be considered harmless. . . . That determination must be made in light of the entire record [including the strength of the state's case without the evidence admitted in error]." (Citation omitted; internal quotation marks omitted.) *State* v. *Coccomo*, 302 Conn. 664, 716–18, 31 A.3d 1012 (2011).

As noted, the evidence challenged by the defendant concerned his refusal to take the field sobriety test. That evidence, however, which he claims violated his privilege against self-incrimination, is incriminating only as to his intoxication, not as to whether he operated the vehicle. The evidence of the defendant's intoxication was abundant. Both Jackson and Geraci testified that the defendant smelled of alcohol and that his speech was slurred. The state submitted the results of two blood alcohol tests taken after the defendant was arrested, both indicating a blood alcohol level more than twice the legal limit. Thus, the evidence that the defendant sought to suppress was cumulative of other intoxication evidence submitted by the state.

Moreover, the defendant did not contest at trial the fact that he was intoxicated. He claimed, rather, that he had not been driving his vehicle, a claim that is belied by Jackson's testimony and his own unchallenged statement to Geraci that he never got the car out of the parking lot. Because the evidence challenged by the defendant incriminated him only as to intoxication, and his intoxication was not an issue at trial, we conclude that even if the court improperly admitted the evidence challenged by the defendant, a question that we need not reach, the admission of that evidence was harmless beyond a reasonable doubt.

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] The defendant has not challenged the legality of the patdown.