******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# STATE OF CONNECTICUT *v.* HEATHER GANSEL
## (AC 39427)

DiPentima, C. J., and Lavine and Flynn, Js.

*Syllabus*

Convicted of the crime of larceny in the first degree by embezzlement, the defendant appealed to this court. The defendant, who owned two businesses, helped her grandparents, L and M, to manage their household finances and personal needs. After L died, M gave the defendant power of attorney to be her agent. After M sold her house and moved in with her son, the defendant's uncle, she deposited the proceeds from the sale of her house in a bank account that she jointly owned with the defendant for the purpose of allowing the defendant to have access to the funds to fulfill her duties as M's agent and to use the funds for M's benefit. Thereafter, the defendant transferred approximately $412,400 from the joint bank account into her personal and business accounts, and she used more than $20,000 of M's funds to pay for her own personal and business expenses. After M learned that a significant amount of her funds were missing, the defendant's uncle convened a family meeting at which the defendant admitted to having taken a portion of the missing funds and that she was willing to create a repayment plan to reimburse M. Shortly thereafter, the defendant sent two e-mails to her uncle in which she again admitted to having taken M's funds and reconfirmed her commitment to devising a repayment plan. The defendant also wrote a letter to M in which she promised to repay her the missing funds. On appeal, the defendant claimed that the trial court improperly admitted the inculpatory e-mails into evidence because they were not properly authenticated. *Held* that the defendant failed to show that the admission into evidence of the e-mails was harmful; even if the trial court abused its discretion by admitting the inculpatory e-mails into evidence, any error was harmless, as the e-mails were cumulative of other properly admitted evidence that independently provided a basis for the defendant's conviction, including the testimony of the defendant's uncle at trial that the defendant unequivocally admitted at the family meeting that she unlawfully had taken M's money, and the letter that the defendant wrote to M in which she had promised to repay her the missing funds.

Argued April 17—officially released July 11, 2017

(Appeal from Superior Court, judicial district of Stamford-Norwalk, White, J.)

*Procedural History*

Substitute information charging the defendant with the crime of larceny in the first degree, brought to the Superior Court in the judicial district of Stamford-Norwalk and tried to the court, *White, J.*; judgment of guilty, from which the defendant appealed to this court. *Affirmed.*

*John R. Williams*, for the appellant (defendant).

*Kathryn W. Bare*, assistant state's attorney, with whom, on the brief, were, *David Cohen*, former state's attorney, *James Bernardi*, supervisory assistant state's attorney, and *Joseph C. Valdes*, senior assistant state's attorney, for the appellee (state).

*Opinion*

PER CURIAM. The defendant, Heather Gansel, appeals from the judgment of conviction, following a trial to the court, of larceny in the first degree by embezzlement in an amount more than $20,000 in violation of General Statutes §§ 53a-119 (1), 53a-121 (b), and 53a-122 (a) (2). The defendant claims that the court abused its discretion by admitting into evidence certain inculpatory e-mails because they were not properly authenticated. Because we conclude that an evidentiary error, if any, was harmless, we affirm the judgment of the trial court.

The following facts, which were found by the court in its oral memorandum of decision,[1] and procedural history are relevant to our resolution of the defendant's appeal. The defendant, who was a chiropractor and, for two years, the sole owner of two businesses, lived with her grandparents, Lou Sabini and Marietta Sabini, in her grandparents' house located in Stamford. Her grandparents had two children: the defendant's mother, Marilyn Gansel, and the defendant's uncle, Louis Sabini. The defendant helped her grandparents manage their household accounts and personal needs. On May 13, 2010, after Lou Sabini had died, Marietta Sabini gave the defendant written power of attorney to act as her agent. Marietta Sabini then sold the Stamford house and moved in with Louis Sabini. The defendant lived elsewhere but continued to manage Marietta Sabini's finances and personal needs.

On June 22, 2010, Marietta Sabini received approximately $592,539 in proceeds from the sale of her house. She deposited the money in a bank account she jointly held with the defendant (Wachovia account). All of the money deposited in the Wachovia account belonged solely to Marietta Sabini, and she only deposited the money in the Wachovia account so that the defendant could access the funds to fulfil her duties as Marietta Sabini's agent and to use the funds for Marietta Sabini's benefit. The two also jointly held a second bank account (ING Direct account). In addition, the defendant had her own personal account and two separate accounts for each of her businesses.

On June 24, 2010, the defendant withdrew $262,720 from the Wachovia account and deposited it into the ING Direct account. Between June 22, 2010 and October 17, 2012, the date of Marietta Sabini's death, the defendant transferred approximately $412,400 from the Wachovia account and the ING Direct account into her personal and business accounts. In addition, she used more than $20,000 of Marietta Sabini's money to pay for her own personal and business expenses, such as catering, family matters, real estate, groceries, gasoline, and student debt.

In August, 2012, Marietta Sabini tried to use her

Wachovia debit card at a nail salon, but her card was declined because it had been cancelled. Louis Sabini and Marietta Sabini subsequently went to Wachovia bank and learned that a significant amount of Marietta Sabini's money was missing. On August 22, 2012, Louis Sabini held a family meeting to determine what had happened to the missing money. Six people—Louis Sabini, Louis Sabini's wife, the defendant, Marietta Sabini, Marilyn Gansel, and Marilyn Gansel's husband—attended the meeting. During the meeting, Louis Sabini accused the defendant of stealing $110,000 from Marietta Sabini. She responded: "yes," and "I realize that Louis [Sabini]," but then stated that she had only taken $109,000 and that she was willing to create a repayment plan to reimburse Marietta Sabini.

Shortly thereafter, the defendant sent Louis Sabini two e-mails from her business e-mail address, both of which contained incriminating information against her, including that she regretted "removing" Marietta Sabini's money from her accounts and that she was working with an attorney to devise an affordable repayment plan. The defendant claims that these e-mails were improperly admitted into evidence. On September 21, 2012, the defendant wrote a letter to Marietta Sabini, promising to repay her $283,000. She also wrote, "[i]n this correspondence to you I want to make you aware of my efforts to make things right," "[p]lease be aware that I want to make every effort possible to return all funds to you in an organized, efficient, and consistent manner," and, "I am terribly sorry for my actions and for the pain all of this has caused you. I hope one day you might be able to forgive me."

The defendant was arrested on November 29, 2012. She waived her right to a jury trial, and on October 29, 2015, the court found the defendant guilty of larceny in the first degree by embezzlement in an amount more than $20,000. The court found that the state had proved all of the elements of larceny in the first degree by embezzlement and stated, "[the defendant] had the specific intent to appropriate [Marietta Sabini's property] to herself or her businesses . . . ." The court sentenced the defendant to ten years incarceration, execution suspended after three years, and five years of probation. This appeal followed. Additional facts will be set forth as necessary.

On appeal, the defendant claims that the court abused its discretion by admitting into evidence the inculpatory e-mails she had sent to Louis Sabini. She argues that the state failed to properly authenticate the e-mails as being written and sent her because it relied solely on Louis Sabini's testimony to prove their authenticity. She contends that because the court expressly relied on the defendant's admissions in the e-mails to support its judgment, their admission was not harmless. We disagree that the defendant established harm and, there-

fore, need not decide whether the court abused its discretion.

"[W]hen an improper evidentiary ruling is not constitutional in nature, the defendant bears the burden of demonstrating that the error was harmful. . . . [T]he proper standard for determining whether an erroneous evidentiary ruling is harmless should be whether the [court's judgment] was substantially swayed by the error." (Internal quotation marks omitted.) *State* v. *LeBlanc*, 148 Conn. App. 503, 508–509, 84 A.3d 1242, cert. denied, 311 Conn. 945, 90 A.3d 975 (2014).

Assuming, without deciding, that the court abused its discretion in admitting the inculpatory e-mails into evidence, we conclude that the defendant has failed to show that the error was harmful because the state presented ample other evidence, apart from the e-mails, that the defendant unequivocally admitted that she unlawfully took Marietta Sabini's money. As noted, Louis Sabini testified that at the family meeting, which six family members attended, when he accused the defendant of stealing $110,000 from Marietta Sabini, the defendant responded, "yes," and "I realize that Louis [Sabini]." She also admitted that she "had stolen" "only $109,000" and that she "would come up with some sort of a plan within the next few days" to reimburse Marietta Sabini. Marilyn Gansel, who testified for the defendant, confirmed that this meeting took place. She also testified that the defendant "did borrow some money" and that she "promised to pay all of this money back . . . ."

In addition, the defendant wrote to Marietta Sabini in the September 21, 2012 letter that she "returned a total of $30,500 to the [Wachovia] account," and "[t]o honor my commitment, I will begin to make monthly installments of $500 starting October 15, 2012. My attorney and I have discussed how these funds will be allocated." She indicated that she would transfer $283,000 into two separate trust funds, one of which "will hold your 'living' money ($106,000) and the other trust fund will hold your 'home healthcare' money ($177,000)."

Louis Sabini's testimony and the letter the defendant sent to Marietta Sabini were sufficient evidence to support her conviction. Because the defendant's admissions in the e-mails were cumulative of other evidence that properly had been admitted, and which independently provided the basis for conviction, we conclude that the defendant failed to show the admission of the e-mails was harmful.

The judgment is affirmed.

[1] The defendant has failed to provide this court with a record that contains a signed transcript of the trial court's oral decision, in accordance with Practice Book § 64-1. The record does, however, contain the unsigned transcript of the October 29, 2015 hearing. On the basis of our review of the unsigned transcript, we are able to locate the portions of the record that constitute the court's orders. Thus, despite the defendant's failure to abide by the rules of practice, we will review her claim. See *Stechel* v. *Foster*, 125

Conn. App. 441, 445–46, 8 A.3d 545 (2010), cert. denied, 300 Conn. 904, 12 A.3d 572 (2011).

———————————————