******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

# STATE OF CONNECTICUT *v.* ZANE R. MEGOS
## (AC 38967)

Lavine, Mullins and Beach, Js.

*Syllabus*

The defendant, who previously had pleaded guilty to six counts of larceny in the fourth degree and was serving probation in connection with that conviction, appealed to this court from the judgment of the trial court revoking his probation and imposing a sentence of sixty months incarceration. The defendant had been charged with violating his probation following his arrest on charges of larceny in the third degree and criminal impersonation, which involved an incident in which he was alleged to have wrongfully obtained a deposit from F for a sham real estate transaction. The trial court found, by a preponderance of the evidence, that the defendant had violated his probation by committing the crimes charged. On appeal, the defendant claimed, inter alia, that the trial court erroneously found that he had violated the condition of his probation that he not violate any criminal law. *Held*:

1. The trial court's findings that the defendant had violated his probation by committing criminal impersonation and larceny in the third degree were not clearly erroneous, there having been evidence presented that demonstrated that the defendant had impersonated another individual and acted in a manner so as to defraud F and to permanently deprive her of her money: the evidence showed that the defendant previously had defrauded two other victims by wrongfully retaining cash deposits for sham real estate transactions in which he falsely promised to rent or to sell them property in exchange for a cash deposit, that he had attempted to repeat that scam by obtaining money from F by falsely promising to rent her a condemned apartment, that he returned F's deposit only after she confronted him, and that, as part of his scheme to defraud F, he impersonated his business partner, gave F receipts previously signed by the business partner, and used the name of his business partner, not his actual name, when asked directly for his name, all of which demonstrated that he impersonated another person and acted in such assumed character with the intent to defraud F, and that he intended to permanently deprive F of the deposit by falsely promising a condemned apartment that would never be ready for her to occupy; moreover, although the defendant claimed that the court should have credited evidence he presented showing that he did not intend to permanently deprive F of her money, he did not return the deposit until F explicitly asked for it back, and it was the exclusive province of the court as the trier of fact to weigh conflicting testimony and to credit some, all or none of the defendant's testimony.

2. The defendant's claim that the state did not establish that he wilfully or intentionally violated his probation or any laws was without merit; our Supreme Court has determined previously that wilfulness is not an element of a probation violation, as the state needs to establish only that a probationer knew of the condition and engaged in conduct that violated it, and the defendant here did not dispute that he knew that, as a condition of his probation, he could not violate any criminal laws of this state, and the record demonstrated that he engaged in conduct that violated the criminal laws of this state.

3. The trial court did not abuse its discretion by admitting testimony concerning two of the defendant's six prior convictions for larceny in the fourth degree, which was offered by the state to show a common scheme or plan; it is well settled that probation proceedings are informal and that strict rules of evidence do not apply to such proceedings, in which a broad evidentiary standard is applied, and on the basis of the similarity between the past crimes and the incident involving F, the trial court properly determined that the evidence regarding the prior crimes was relevant to the inference that the defendant intended to keep F's deposit.

4. The trial court did not abuse its discretion in revoking the defendant's probation and imposing a sentence of sixty months incarceration; that court, which balanced the defendant's liberty and rehabilitation against

the protection of society, found that the defendant was not amenable to probation, based on his similar conduct within months of the start of his probationary period, it considered the need to protect the public from the defendant's conduct, and it acted within its discretion by imposing the remainder of the defendant's sentence, which was not unjust or excessive.

Argued May 17—officially released September 5, 2017

*Procedural History*

Information charging the defendant with violation of probation, brought to the Superior Court in the judicial district of New London and tried to the court, *Williams, J.*; judgment revoking the defendant's probation, from which the defendant appealed to this court. *Affirmed.*

*Kenneth A. Leary*, for the appellant (defendant).

*Margaret Gaffney Radionovas*, senior assistant state's attorney, with whom, on the brief, were *Michael L. Regan*, state's attorney, and *Rafael I. Bustamante*, assistant state's attorney, for the appellee (state).

*Opinion*

MULLINS, J. The defendant, Zane R. Megos, appeals from the judgment of the trial court revoking his probation pursuant to General Statutes § 53a–32 and imposing a sentence of sixty months incarceration. On appeal, the defendant claims that the trial court: (1) erroneously found that he violated the conditions of his probation, (2) abused its discretion by admitting evidence of prior crimes that he had committed, and (3) abused its discretion by revoking his probation. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our consideration of the defendant's claims on appeal. On April 29, 2014, the defendant pleaded guilty under the *Alford* doctrine[1] to six counts of larceny in the fourth degree in violation of General Statutes §§ 53a-119 and 53a-125 (a).[2] His conviction on two of those larceny counts arose from incidents in which the defendant wrongfully obtained and withheld cash "deposits" from the victims by falsely promising to rent them an apartment or sell them a house. In the first incident, the defendant received $1600 from a disabled, wheelchair-bound woman as a deposit on an apartment that he had advertised on Craigslist. The defendant told the victim that she would be able to move in on the first day of the month, but the apartment was not ready on that date. The defendant continued to tell the victim that the apartment would be ready at various dates in the future, but the apartment never was available when those dates arrived. The defendant did not return the victim's deposit, despite her request that he do so. In the second incident, the defendant obtained $4550 from another victim as a deposit on the purchase of a house. Several months after taking the deposit, the house was sold to someone else, and the defendant kept the victim's money.

After pleading guilty to six larceny charges, the defendant was sentenced to six years incarceration, execution suspended, followed by three years of probation. The terms of the defendant's probation, which he signed on April 29, 2014, included the standard condition that he "not violate any criminal law of the United States, this state or any other state or territory." The defendant's probation began on April 29, 2014.

Several months after his probation began, the defendant was involved in another incident in which he was alleged to have wrongfully obtained a deposit for a sham real estate transaction. Sometime in October, 2014, the defendant posted an online advertisement offering an apartment in Norwich for rent. At the time that the defendant posted that advertisement, however, the advertised apartment was condemned.

On October 29, 2014, the defendant met with Nicole Foster. Foster, who was a disabled mother, was seeking

to rent the apartment advertised by the defendant because a fire had destroyed her family's house in September, 2014. The defendant allowed Foster to view the apartment and told her that she would need to provide him with a cash deposit on that same day.

Although she did not have the full deposit at that moment, Foster decided to rent the apartment advertised by the defendant and with her father, gave the defendant $500 in cash. Later that day, Foster tendered the rest of the cash deposit, totaling $2925 to the defendant. In return, the defendant gave Foster three receipts that had been presigned by the defendant's business partner, Bishop Taylor. According to the defendant, he and Taylor agreed to use receipts signed only by Taylor because the Norwich Building Department had a "vendetta" against the defendant: "We didn't want to draw attention to the building department [that] I was involved in the building. We didn't want them coming out and writing . . . up the wazoo . . . new [building code] violations. . . . It wasn't with intent to defraud. I said to [Taylor] we're not gonna get this through if it's in my name." Upon examining the receipts, Foster's father told the defendant that he could not read "what *your* first name is," and the defendant answered "Bishop." (Emphasis added.)

At this meeting, the defendant also informed Foster that the apartment was not ready because the city needed to perform inspections. The defendant had represented to Foster that an inspection would occur on several different dates. No inspections had been scheduled for the premises, however, until more than a month later on December 12, 2014.

On November 10, 2014, Foster spoke with an employee at the Norwich Building Department and learned that the man to whom she had given her deposit actually was the defendant, not Taylor. She also learned that no inspections were scheduled for the premises. Thereafter, Foster and her father confronted the defendant and requested the return of the deposit, which the defendant subsequently returned to Foster.

On August 4, 2015, as a result of the incident with Foster, the defendant was arrested for larceny in the third degree in violation of General Statutes § 53a-124,[3] and criminal impersonation in violation of General Statutes § 53a-130.[4] On the basis of his arrest for those alleged crimes, the defendant was charged with violating the terms of his April, 2014 probation.

A violation of probation hearing was held over the course of four days during February, 2016. In an oral ruling, the court found, by a preponderance of the evidence, that the defendant had violated his probation by committing the crimes of criminal impersonation and larceny in the third degree.[5] The court then revoked the defendant's probation and sentenced him to sixty

months incarceration for the violation. The court reasoned that the defendant had failed to take "full advantage" of his probation and had "instead decided . . . to defraud and to deceive the people who needed immediate housing." Specifically, the court found that the defendant was "not amenable to probation, based on [his] similar criminal conduct within months of the start of [his] probationary period." This appeal followed. Additional facts will be set forth as necessary.

As a preliminary matter, we set forth the general principles of law pertaining to revocation of probation proceedings. "[R]evocation of probation hearings, pursuant to § 53a–32, are comprised of two distinct phases, each with a distinct purpose. . . . In the evidentiary phase, [a] factual determination by a trial court as to whether a probationer has violated a condition of probation must first be made. . . . In the dispositional phase, [i]f a violation is found, a court must next determine whether probation should be revoked because the beneficial aspects of probation are no longer being served." (Internal quotation marks omitted.) *State* v. *Maurice M.*, 303 Conn. 18, 25–26, 31 A.3d 1063 (2011).

With respect to the evidentiary phase of a revocation proceeding, "[t]o support a finding of probation violation, the evidence must induce a reasonable belief that it is more probable than not that the defendant has violated a condition of his or her probation. . . . A fact is more probable than not when it is supported by a fair preponderance of the evidence. . . . [T]he purpose of a probation revocation hearing is to determine whether a defendant's conduct constituted an act sufficient to support a revocation of probation . . . rather than whether the defendant had, beyond a reasonable doubt, violated a criminal law. The proof of the conduct at the hearing need not be sufficient to sustain a violation of a criminal law." (Citation omitted; internal quotation marks omitted.) *State* v. *Sherrod*, 157 Conn. App. 376, 382–83, 115 A.3d 1167, cert. denied, 318 Conn. 904, 122 A.3d 633 (2015). Thus, "*a probation violation need be proven only by a preponderance of the evidence.*" (Emphasis added.) *State* v. *Rollins*, 51 Conn. App. 478, 483, 723 A.2d 817 (1999).

Regarding the second phase of a revocation proceeding, the dispositional phase, if the trial court "determines that the evidence has established a violation of a condition of probation, then it proceeds to . . . the determination of whether the defendant's probationary status should be revoked. On the basis of its consideration of the whole record, the trial court may continue or revoke the sentence of probation . . . [and] . . . require the defendant to serve the sentence imposed or impose any lesser sentence. . . . In making this second determination, the trial court is vested with broad discretion." (Internal quotation marks omitted.) *State* v. *Sherrod*, supra, 157 Conn. App. 381–82.

I

The defendant first claims that the trial court's finding that he violated the conditions of his probation requiring him not to violate any criminal law is clearly erroneous. This claim essentially consists of three separate challenges to the court's finding of a violation. Specifically, the defendant argues that the state did not establish, by a preponderance of the evidence, that he (1) committed criminal impersonation, (2) committed larceny in the third degree, and (3) "wilfully and intentionally violated his probation or any laws . . . ." We consider these three challenges seriatim and conclude that they all are without merit.

A

The defendant's first challenge to the court's finding that he violated his probation is that the evidence fails to demonstrate that he committed criminal impersonation. We disagree.

We begin our analysis of the defendant's claim by setting forth our well settled standard of review. "This court may reverse the trial court's initial factual determination that a condition of probation has been violated only if we determine that such a finding was clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling." (Internal quotation marks omitted.) *State* v. *Sherrod*, supra, 157 Conn. App. 382.

Our analysis also is informed by a review of the statutory elements of the crime of criminal impersonation. "A person is guilty of criminal impersonation when such person: (1) *Impersonates another* and *does an act in such assumed character with intent to obtain a benefit or to injure or defraud* another . . . ." (Emphasis added.) General Statutes § 53a-130 (a).

After applying the applicable law to the record before us, we conclude that the trial court's finding that the defendant had violated his probation by committing criminal impersonation was not clearly erroneous. There was evidence presented that, prior to meeting with Foster, the defendant had defrauded two other victims by wrongfully retaining cash deposits for sham real estate transactions. In an apparent attempt to repeat this scam, the defendant met with Foster, offering to rent her a condemned apartment. When Foster agreed to rent the apartment, the defendant insisted on an immediate cash deposit. The defendant also told Foster that, although the apartment was not yet ready, it would soon be inspected. Afterward, Foster learned that the apartment was never scheduled for an inspec-

tion, and, when she confronted the defendant about this, he returned her deposit. As part of the defendant's scheme to defraud Foster, the defendant impersonated his business partner, Bishop Taylor. The defendant gave Foster receipts presigned by Taylor in order to avoid "draw[ing] attention to the building department [that] [he] was involved in the building." Furthermore, when asked directly for his name, the defendant replied, "Bishop," instead of his actual name.[6] Accordingly, we conclude that it was not clearly erroneous for the court to find that the defendant had violated the terms of his probation by impersonating another person and acting in such assumed character with the intent to defraud Foster.

B

The defendant next argues that it was clearly erroneous for the court to find that he had violated his probation by having committed larceny in the third degree. We disagree.

We begin our analysis of the defendant's second challenge to the court's finding that he violated his probation by reviewing the statutory elements of larceny in the third degree. "A person is guilty of larceny in the third degree when he commits larceny, as defined in section 53a-119, and . . . (2) the value of the property or service exceeds two thousand dollars . . . ." General Statutes § 53a-124 (a). Pursuant to § 53a-119: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner." Larceny includes obtaining property by false promises. "A person obtains property by false promise when, pursuant to a scheme to defraud, he obtains property of another by means of a representation, express or implied, that he . . . will in the future engage in particular conduct, and when he does not intend to engage in such conduct . . . . In any prosecution for larceny based upon a false promise, the defendant's intention or belief that the promise would not be performed may not be established by or inferred from the fact alone that such promise was not performed." General Statutes § 53a-119 (3).

After applying the applicable law to the record before us, we conclude that the trial court's finding that the defendant had violated the terms of his probation by having committed larceny in the third degree was not clearly erroneous. There was evidence presented that the defendant obtained $2925 from Foster by falsely promising to rent her a condemned apartment. As previously set forth in considerable detail, the defendant had perpetrated several schemes in the past in which he defrauded victims by falsely promising to rent or to sell them property in exchange for a cash deposit. In one of those prior incidents, the defendant promised a victim an apartment that he never made ready for her

to occupy, and he kept her deposit. Thus, the court could have inferred that the defendant intended to do the same with Foster, i.e., permanently deprive her of the deposit by falsely promising a condemned apartment that would never be ready for her to occupy. Accordingly, we conclude that it was not clearly erroneous for the court to find that the defendant had violated his probation on the foregoing basis.

We are unpersuaded by the defendant's contention that the court improperly disregarded evidence suggesting that he did not commit larceny in the third degree. The defendant argues that the trial court should have credited evidence he presented that tended to show that he had not intended to *permanently* deprive Foster of her money. The defendant, however, did not return the deposit until Foster explicitly asked for it back. In any event, the defendant's argument must fail because, as previously explained in this opinion, "[i]t is the exclusive province of the trier of fact to weigh conflicting testimony and make determinations of credibility, crediting some, all or none of any given witness' testimony." (Internal quotation marks omitted.) *State* v. *Allen*, 289 Conn. 550, 559, 958 A.2d 1214 (2008).

C

The defendant's final challenge to the court's finding that he violated his probation is that the state did not establish that he "wilfully and intentionally violated his probation or any laws . . . ." This claim is without merit.[7] Our Supreme Court has stated unequivocally that "the language of [§ 53a-32] demonstrates that the legislature did not intend to make wilfulness an element of a probation violation." *State* v. *Hill*, 256 Conn. 412, 420, 773 A.2d 931 (2001). "[T]o establish a violation, the state needs only to establish that the probationer knew of the condition and engaged in conduct that violated the condition." Id., 424.

In the present case, the defendant does not dispute that he knew that as a condition of his probation, he could not violate this state's criminal laws. Furthermore, we already have concluded in parts I A and B of this opinion that the defendant engaged in conduct that violated this state's criminal laws and, therefore, a condition of his probation. Accordingly, we conclude that it was not clearly erroneous for the trial court to find that the defendant violated the terms of his probation.

II

The defendant's second claim is that the court improperly admitted evidence of other crimes that he had committed. The defendant argues that the court, pursuant to § 4-5 (c) of the Connecticut Code of Evidence,[8] erred by admitting testimony concerning two of his six prior convictions for larceny in the fourth degree. The state argues, in part, that the rules of evidence do not apply in violation of probation hearings,

and, therefore, the evidence did not have to satisfy § 4-5 (c) of the Connecticut Code of Evidence to be admissible. We agree with the state.

The following additional facts and procedural history are relevant to the resolution of the defendant's claim. The state called Chief Probation Officer Tamara Lanier to testify regarding two of the defendant's prior larceny convictions. Defense counsel objected, claiming that the prior convictions were not relevant and would be prejudicial. The prosecutor argued that the state intended to offer the testimony to show a common scheme or plan. The court overruled defense counsel's objection, citing § 4-5 (c) of the Connecticut Code of Evidence.[9]

After Lanier had testified regarding the defendant's having taken $1600 from a disabled woman, defense counsel renewed his objection to Lanier's testimony. The court overruled the objection again, based on the same provision of the Connecticut Code of Evidence. Lanier then explained the facts of the failed real estate sale, when the defendant did not return a prospective buyer's deposit despite the fact that the house had been sold to another party. At this point, defense counsel objected again. The court overruled the objection, stating that the testimony "is relevant to the present proceedings insofar as the basis for the alleged violation of probation is somewhat similar to the two incidents that were just reported by Chief Lanier."

We begin by stressing that the Connecticut Code of Evidence does not apply to proceedings involving probation. Section 1-1 (d) (4) of the Connecticut Code of Evidence specifically provides: "The Code, other than with respect to privileges, does not apply in proceedings such as, but not limited to, the following . . . Proceedings involving probation." "It is well settled that probation proceedings are informal and that strict rules of evidence do not apply to them. . . . Hearsay evidence may be admitted in a probation revocation hearing if it is relevant, reliable and probative. . . . At the same time, [t]he process . . . is not so flexible as to be completely unrestrained; there must be some indication that the information presented to the court is responsible and has some minimal indicia of reliability." (Citation omitted; internal quotation marks omitted.) *State* v. *Lanagan*, 119 Conn. App. 53, 58, 986 A.2d 1113 (2010).

"The evidentiary standard for probation violation proceedings is broad. . . . [T]he court may . . . consider the types of information properly considered at an original sentencing hearing because a revocation hearing is merely a reconvention of the original sentencing hearing. . . . The court may, therefore, consider hearsay information, evidence of crimes for which the defendant was indicted but neither tried nor convicted, evidence of crimes for which the defendant was acquitted, and evidence of indictments or informations that were

dismissed." (Citation omitted; internal quotation marks omitted.) *State* v. *Young*, 81 Conn. App. 710, 716, 841 A.2d 737, cert. denied, 269 Conn. 901, 852 A.2d 733 (2004).

Regarding challenges to the trial court's evidentiary rulings, our standard of review "is that these rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. . . . In reviewing claims that the trial court abused its discretion, great weight is given to the trial court's decision and every reasonable presumption is given in favor of its correctness. . . . We will reverse the trial court's ruling only if it could not reasonably conclude as it did." (Internal quotation marks omitted.) *State* v. *Bullock*, 155 Conn. App. 1, 38, 107 A.3d 503, cert. denied, 316 Conn. 906, 111 A.3d 882 (2015).

The evidence presented regarding the defendant's prior crimes was relevant. "[R]elevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue." (Internal quotation marks omitted.) *State* v. *Mark*, 170 Conn. App. 254, 262, 154 A.3d 572, cert. denied, 324 Conn. 926, 155 A.3d 1269 (2017). Indeed, in order to prove that the defendant committed larceny in the third degree, the state needed to prove that the defendant took a deposit from Foster for a property that was not available and that he intended to keep that deposit. Each incident involved the defendant taking a deposit for a unit that was not available for occupancy. In the prior two incidents, the defendant refused to return the deposits. Those prior crimes support the inference that the defendant intended to keep Foster's deposit. On the basis of the similarity between the past crimes and the present incident, the court found the testimony to be relevant.

After reviewing the record, we conclude that the court did not abuse its discretion in admitting the evidence regarding the defendant's prior crimes of larceny in the fourth degree. The facts of the prior crimes were sufficiently similar to the present circumstances to be relevant.

### III

The defendant's final claim is that the trial court abused its discretion in revoking his probation and imposing a sentence of sixty months incarceration. We disagree.

"The standard of review of the trial court's decision at the sentencing phase of the revocation of probation hearing is whether the trial court exercised its discretion properly by reinstating the original sentence and ordering incarceration. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only

where an abuse of discretion is manifest or where injustice appears to have been done. . . . On the basis of its consideration of the whole record, the trial court may continue or revoke the sentence of probation . . . [and] . . . require the defendant to serve the sentence imposed or impose any lesser sentence. . . . In making this second determination, the trial court is vested with broad discretion. . . . In determining whether to revoke probation, the trial court shall consider the beneficial purposes of probation, namely rehabilitation of the offender and the protection of society. . . . The important interests in the probationer's liberty and rehabilitation must be balanced, however, against the need to protect the public." (Internal quotation marks omitted.) *State* v. *Francis*, 146 Conn. App. 448, 453–54, 76 A.3d 744, cert. denied, 310 Conn. 960, 82 A.3d 628 (2013).

The record reveals that the trial court balanced the defendant's liberty and rehabilitation against the protection of society. Specifically, the court noted that the defendant was "not amenable to probation, based on [his] similar criminal conduct within months of the start of [his] probationary period." The court considered the need to protect the public from the defendant's conduct, recognizing that the defendant's latest victim was a woman in need of immediate housing. It was within the court's discretion to impose the remainder of the defendant's sentence, and we do not find the court's imposition of a sixty-month sentence to be unjust, excessive, or an abuse of the court's discretion.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] See *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[2] General Statutes § 53a-119 provides in relevant part: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner."

General Statutes § 53a-125 provides in relevant part: "(a) A person is guilty of larceny in the fourth degree when he commits larceny as defined in section 53a-119 and the value of the property or service exceeds one thousand dollars."

[3] General Statutes § 53a-124 provides in relevant part: "(a) A person is guilty of larceny in the third degree when he commits larceny, as defined in section 53a-119, and . . . (2) the value of the property or service exceeds two thousand dollars . . . ."

[4] General Statutes § 53a-130 provides in relevant part: "(a) A person is guilty of criminal impersonation when such person: (1) Impersonates another and does an act in such assumed character with intent to obtain a benefit or to injure or defraud another . . . ."

[5] The court also found that the state proved by a preponderance of the evidence that the defendant committed attempt to commit larceny in the third degree. The taking of Foster's deposit was the basis of the attempt to commit larceny and the completed larceny. Thus, the attempted larceny does not appear to be a separate and independent basis supporting the court's judgment. Also, on appeal both the defendant and the state exclusively address the completed act of larceny. Therefore, we do not address the court's mention of the attempt to commit larceny.

[6] The gravamen of the defendant's first challenge to the court's finding that he violated his probation appears to be that there was conflicting testimony regarding whether he impersonated his business partner. Foster testified that her father told the defendant that he could not "read what

*your* first name is" and asked him for *his* first name. (Emphasis added.) In contrast, the defendant testified that he heard her father ask him, "who is the owner?" Thus, according to the defendant, he simply was identifying the name of the owner on the receipt, not impersonating someone else. We reject this argument because "[i]t is the exclusive province of the trier of fact to weigh conflicting testimony and make determinations of credibility, crediting some, all or none of any given witness' testimony." (Internal quotation marks omitted.) *State* v. *Allen*, 289 Conn. 550, 559, 958 A.2d 1214 (2008). As the trier of fact, the court was free to credit the testimony indicating that the defendant impersonated his business partner.

Indeed, the trial court expressly found the defendant not to be credible: "[T]he court notes that [the defendant] himself conceded that he is a felon with a history of convictions for crimes of dishonesty, but it is his present criminal conduct, rather than his criminal past, that causes the court to disbelieve his testimony. His substantially similar criminal conduct from years past, however, remains an unavoidable, additional obstacle that his attempt at credibility cannot overcome."

[7] Within this claim, the defendant also appears to repeat his arguments that the court erroneously found that he committed the crimes of criminal impersonation and larceny in the third degree. These arguments already have been addressed, and they warrant no further discussion. See parts I A and B of this opinion.

[8] Section 4–5 (c) of the Connecticut Code of Evidence provides in relevant part: "Evidence of other crimes, wrongs or acts of a person is admissible . . . to prove intent, identity, malice, motive, common plan or scheme, absence of mistake or accident, knowledge, a system of criminal activity, or an element of the crime, or to corroborate crucial prosecution testimony."

[9] The trial court incorrectly referred to § 4-5 (b). Section 4-5 of the Connecticut Code of Evidence was amended in 2011, and subsection (b) involves the admissibility of other sexual misconduct to establish that the defendant had a tendency or propensity to engage in sexual misconduct. The court's reference to subsection (b) is understood to refer to subsection (c).