******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

# STATE OF CONNECTICUT *v.* RAYMOND TUCKER
## (AC 38935)

Alvord, Prescott and Mihalakos, Js.

*Syllabus*

The defendant, who had been on probation in connection with his conviction of the crime of conspiracy to commit assault in the first degree, appealed to this court from the judgment of the trial court revoking his probation and committing him to the custody of the Commissioner of Correction. During his probation, the defendant was arrested and charged with assault in the third degree for allegedly punching the victim in the face, causing her to suffer certain injuries. Following a hearing, the trial court found that the defendant committed assault in the third degree in violation of statute (§ 53a-61), thereby violating a general condition of his probation, and sentenced him to sixty-two months incarceration, execution suspended after three years, followed by three years probation. On appeal, the defendant claimed, inter alia, that the trial court erred in admitting into evidence a 911 recording allegedly made by the victim. *Held*:

1. The trial court did not abuse its discretion in admitting the 911 recording into evidence: that court properly overruled the defendant's lack of foundation objection to the admission of the 911 recording, as the court, to authenticate the recording, identified the unique numbering system of the recording to link it to the incident and properly considered the contents of the recording, which identified the victim, her address, the defendant both by name and physical description, and the nature of the victim's injuries, and because strict admissibility rules do not apply to probation hearings, it was within the trial court's discretion, as the trier of fact, to assess the reliability of the evidence in light of the circumstances reflected in the recording; moreover, the defendant failed to sustain his burden of providing this court with an adequate record to review his claim of a due process violation resulting from the admission of the recording, as he failed to request that the trial court conduct a balancing test under *State* v. *Shakir* (130 Conn. App. 458) to determine whether good cause existed for not allowing the defendant to confront the victim, and the defendant did not demonstrate an error so obvious that it required reversal under the plain error doctrine.

2. The trial court's finding that the defendant had violated his probation was not clearly erroneous and was supported by sufficient evidence and testimony in the record, including the defendant's statement to his probation officer that he had been in an altercation with the victim, the victim's medical records, which described her swollen, bloody lip and loose teeth, and the authenticated 911 recording in which the victim identified the defendant as the person who had assaulted her.

3. The trial court did not abuse its discretion in revoking the defendant's probation and sentencing him to a period of three years incarceration; that court properly considered the testimony of the defendant's probation officer, who indicated that he believed that the defendant was inappropriate for probation, as well as the testimony of the victim, who did not dispute that the defendant had hit her, and it also heard testimony concerning the defendant's extensive criminal record, prior probation violations and noncompliance with the conditions of his probation.

Argued October 18, 2017—officially released January 23, 2018

*Procedural History*

Substitute information charging the defendant with violation of probation, brought to the Superior Court in the judicial district of Fairfield, where the matter was tried to the court, *Devlin, J.*; judgment revoking the defendant's probation, from which the defendant appealed to this court; thereafter, the court, *Devlin, J.*, denied the defendant's motion for articulation; subse-

quently, the court, *Devlin, J.*, issued a memorandum of decision regarding the violation of probation. *Affirmed.*

*James B. Streeto*, senior assistant public defender, for the appellant (defendant).

*Bruce R. Lockwood*, senior assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, and *Margaret E. Kelley*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

MIHALAKOS, J. The defendant, Raymond Tucker, appeals from the judgment of the trial court finding him in violation of probation pursuant to General Statutes § 53a-32. On appeal, the defendant claims that the court (1) erred in admitting a 911 recording into evidence, (2) erroneously found that the defendant had violated his probation, and (3) abused its discretion in imposing a sentence of three years incarceration. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the issues on appeal. On July 20, 2012, the defendant was convicted of conspiracy to commit assault in the first degree in violation of General Statutes §§ 53a-48 and 53a-59 (a) (4), and sentenced to six years incarceration, execution suspended after ten months, followed by five years of probation. On June 23, 2015, during his period of probation, the defendant punched the victim[1] in the face, causing her to suffer a swollen and bloody lip, as well as loose teeth. The victim called 911, reported the incident and requested an ambulance. Bridgeport Police Officer Minerva Feliciano was dispatched to the victim's home to investigate a domestic violence assault. When Feliciano arrived, the victim had already been transported to Bridgeport Hospital. Feliciano drove to the hospital, and found the victim crying with a swollen and bloody lip. On the same day, the defendant called his probation officer, Patrick Higgins, and told him that he had gotten into an altercation with the victim and that she had possibly called the police. On August 1, 2015, the defendant was arrested for this incident and charged with assault in the third degree in violation of General Statutes § 53a-61. Rather than charge the defendant with a violation of probation immediately, Higgins arranged for him to attend anger management classes, but the defendant did not attend. On October 6, 2015, the state obtained an arrest warrant for the defendant for violation of probation pursuant to § 53a-32 on the basis of the domestic violence incident.

Following the violation of probation hearing on December 1, 2015, the court found by a preponderance of the evidence that the defendant, by assaulting the victim, violated a criminal law, § 53a-61, thereby violating a general condition of his probation. As a result of this violation, the court revoked the defendant's probation and sentenced him to sixty-two months incarceration, execution suspended after three years, followed by three years of probation. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court erred in admitting the 911 recording into evidence at the violation of probation hearing. Specifically, the defendant

argues that "[t]he trial court erred in admitting the 911 tape as reliable hearsay, as it was unreliable and uncorroborated, not admissible under any applicable hearsay exception, and admitted in violation of the defendant's due process rights." The defendant also argues that the 911 recording was not properly authenticated. To the extent this claim is not preserved, the defendant seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or, alternatively, reversal as plain error. The state counters that the trial court reasonably exercised its discretion in overruling the defendant's objection to the admission of the recording of the victim's 911 call. The state also argues that the defendant cannot prevail on his due process claim because the record is inadequate to review that claim. We agree with the state.

The following additional facts are necessary for the resolution of this claim. At the violation of probation hearing, the state presented the testimony of Feliciano and Higgins. The state also introduced a copy of the victim's medical records into evidence and sought to introduce an audio recording of the victim's 911 call. The defendant objected to the admission of the 911 recording, stating the grounds for his objection as a "lack of foundation." The court overruled his objection and allowed the 911 recording to be admitted into evidence as a full exhibit.[2] In the 911 recording, the victim reported to the dispatcher that the defendant had "hit [her] and put his hands on [her] and . . . [her] teeth . . . [were] messed up" and that "[h]e hit [her] in [her] mouth." The victim identified the defendant both by name and physical description, and also gave her own name and address to the dispatcher. Officer Feliciano testified that she was dispatched to the victim's address and later identified the victim by the same name at the hospital. While at the hospital, Feliciano also noticed that the victim had the injuries described in the 911 recording.

We turn to the defendant's claim that the trial court erred in admitting the 911 recording because it was not properly authenticated.[3] The state concedes that the defendant's authentication claim was properly preserved by the defendant's timely "lack of foundation" objection.

We first set forth our standard of review. Challenges to a trial court's evidentiary rulings in a probation revocation hearing "will be overturned on appeal only where there was an abuse of discretion and a showing by the [defendant] of substantial prejudice or injustice. . . . In reviewing claims that the trial court abused its discretion, great weight is given to the trial court's decision and every reasonable presumption is given in favor of its correctness. . . . We will reverse the trial court's ruling only if it could not reasonably conclude as it did." (Internal quotation marks omitted.) *State* v. *Young*, 81

Conn. App. 710, 714, 841 A.2d 737, cert. denied, 269 Conn. 901, 852 A.2d 733 (2004); see also *State* v. *Bullock*, 155 Conn. App. 1, 38, 107 A.3d 503, cert. denied, 316 Conn. 906, 111 A.3d 882 (2015).

At the outset, we emphasize that the Connecticut Code of Evidence does not apply to proceedings involving probation. Section 1-1 (d) (4) of the Connecticut Code of Evidence specifically provides: "The Code, other than with respect to privileges, does not apply in proceedings such as, but not limited to the following . . . [p]roceedings involving probation." See also *State* v. *Megos*, 176 Conn. App. 133, 147, 170 A.3d 120 (2017) ("The evidentiary standard for probation violation proceedings is broad. . . . [T]he court may . . . consider the types of information properly considered at an original sentencing hearing because a revocation hearing is merely a reconvention of the original sentencing hearing." [Internal quotation marks omitted.]). Furthermore, "[i]t is well settled that probation proceedings are informal and that strict rules of evidence do not apply to them." (Internal quotation marks omitted.) *State* v. *Shakir*, 130 Conn. App. 458, 464, 22 A.3d 1285, cert. denied, 302 Conn. 931, 28 A.3d 345 (2011).

"Both courts and commentators have noted that the showing of authenticity is not on a par with the more technical evidentiary rules that govern admissibility, such as hearsay exceptions, competency and privilege. . . . Rather, there need only be a prima facie showing of authenticity to the court. . . . Once a prima facie showing of authorship is made to the court, the evidence, as long [as] it is otherwise admissible, goes to the jury, which will ultimately determine its authenticity. . . . Of course, once this prima facie showing has been made, the opposing party may present evidence to dispute it. The test for the admission into evidence of sound recordings is the laying of a proper foundation to assure the authenticity of the recordings." (Citation omitted; internal quotation marks omitted.) *State* v. *Peay*, 96 Conn. App. 421, 434–35, 900 A.2d 577, cert. denied, 280 Conn. 909, 908 A.2d 541 (2006).

On the basis of our review of the record, we conclude that the trial court properly overruled the defendant's "lack of foundation" objection to the admission of the 911 tape. The court identified the unique numbering system of the recording to link it to this incident, as well as the contents of the recording and circumstances surrounding the incident, in order to authenticate that the recording was what the prosecutor claimed it to be. The defendant never questioned that the voice on the 911 recording was anything other than the victim's voice. Moreover, because strict admissibility rules do not apply to probation hearings; *State* v. *Quinones*, 92 Conn. App. 389, 392, 885 A.2d 227 (2005), cert. denied, 277 Conn. 904, 891 A.2d 4 (2006); and the trier of fact was the court, not a jury, it was within the court's

discretion upon listening to the audio recording to assess the reliability of the evidence in light of the circumstances reflected in it. See *State* v. *Shakir*, supra, 130 Conn. App. 465. In order to authenticate the recording, the court properly considered the contents of the recording, which identified the victim, her address, the defendant both by name and physical description, and the nature of the victim's injuries. See *State* v. *Valentine*, 255 Conn. 61, 77, 762 A.2d 1278 (2000) ("[t]elephone conversations may be authenticated by circumstantial evidence, if the party calling, in addition to stating his identity, relates facts and circumstances that, taken with other established facts, tend to reveal his identity" [internal quotation marks omitted]). Thus, we cannot conclude that it was an abuse of discretion to allow the 911 recording into evidence.

The defendant also claims that the court improperly admitted the 911 recording into evidence in that it violated his right to due process by failing to accord him the right to confront and cross-examine the adverse witnesses against him. The defendant argues that his objection, paired with the state's reference to *Shakir* in answering the objection; see footnote 3 of this opinion; served to preserve this matter in part. The defendant appears to concede, however, that, under our precedent in *Shakir* and *State* v. *Polanco*, 165 Conn. App. 563, 571–72, 140 A.3d 230, cert. denied, 322 Conn. 906, 139 A.3d 708 (2016), his due process claim is unpreserved.[4] To the extent the defendant's due process claim is unpreserved, he seeks review pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40, as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015), or, alternatively, reversal under the plain error doctrine, codified at Practice Book § 60-5.

We begin by setting forth the relevant legal principles. Pursuant to *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original; internal quotation marks omitted.) *State* v. *Polanco*, supra, 165 Conn. App. 572. "[U]nless the defendant has satisfied the first *Golding* prong, that is, unless the defendant has demonstrated that the record is adequate for appellate review, the appellate tribunal will not consider the merits of the defendant's claim." (Internal quotation marks omitted.) Id., 572–73.

It is well established that the defendant is entitled to limited due process rights in a probation revocation

proceeding. "Probation revocation proceedings fall within the protections guaranteed by the due process clause of the fourteenth amendment to the federal constitution. . . . The revocation proceeding must comport with the basic requirements of due process because termination of that privilege results in a loss of liberty. . . . [T]he minimum due process requirements for revocation of [probation] include written notice of the claimed [probation] violation, disclosure to the [probationer] of the evidence against him, the opportunity to be heard in person and to present witnesses and documentary evidence, the right to confront and cross-examine adverse witnesses in most instances, a neutral hearing body, and a written statement as to the evidence for and reasons for [probation] violation. . . . Despite that panoply of requirements, a probation revocation hearing does not require all of the procedural components associated with an adversarial criminal proceeding." (Internal quotation marks omitted.) *State* v. *Barnes*, 116 Conn. App. 76, 79, 974 A.2d 815, cert. denied, 293 Conn. 925, 980 A.2d 913 (2009).

This court established in *State* v. *Shakir*, supra, 130 Conn. App. 458, that where hearsay evidence is offered in a probation revocation proceeding, due process safeguards require that the court must balance the defendant's interest in cross-examination against the state's good cause for denying the right to cross-examine. Id., 467. "In considering whether the court had good cause for not allowing confrontation or that the interest of justice [did] not require the witness to [appear] . . . the court should balance, on the one hand, the defendant's interest in confronting the declarant, against, on the other hand, the government's reasons for not producing the witness and the reliability of the proffered hearsay." (Internal quotation marks omitted.) *State* v. *Polanco*, supra, 165 Conn. App. 571, citing *State* v. *Shakir*, supra, 468.

This court has determined, however, that where the defendant does not request that the court conduct the *Shakir* balancing test or make a good cause finding, the record is inadequate for review of a due process claim under the first prong of *Golding*. See *State* v. *Shakir*, supra, 130 Conn. App. 468 ("[T]he factual underpinnings for the minor complainant's not being produced to testify that might amount to good cause were not developed via evidence on the record demonstrating whether producing her would cause great difficulty, expense or risk of harm. . . . [W]e conclude that the record is inadequate for our review under *Golding*."); see also *State* v. *Polanco*, supra, 165 Conn. App. 576 ("[T]he record is silent as to the state's reasons for not producing [the witness] at the probation revocation hearing and as to whether those reasons amount to good cause. Accordingly, we decline to review the defendant's unpreserved claim on the basis of an inadequate record.").

The defendant in the present case failed to sustain his burden of providing this court with an adequate record to review his claim of a due process violation. The defendant did not request that the court conduct the *Shakir* balancing test to determine whether good cause existed for not allowing the defendant to confront the victim. The state had no notice of the defendant's due process claim, and, accordingly, did not present evidence regarding its reasons for not producing the victim at this phase of the hearing. The record is silent as to the state's reasons for producing the 911 recording in lieu of the victim's testimony in the evidentiary phase of the probation revocation hearing, when she testified at the dispositional phase of the hearing later that day, and whether those reasons amounted to good cause. Under these circumstances, the state was not responsible for the gap in the evidence, and it would be patently unfair to address the defendant's due process claim on the basis of this record. See *State* v. *Polanco*, supra, 165 Conn. App. 575. Accordingly, we decline to review the defendant's unpreserved due process claim on the basis of an inadequate record.

The defendant similarly cannot prevail under the plain error doctrine. "[The plain error] doctrine, codified at Practice Book § 60-5, is an extraordinary remedy used by appellate courts to rectify errors committed at trial that, although unpreserved, are of such monumental proportion that they threaten to erode our system of justice and work a serious and manifest injustice on the aggrieved party. . . . [T]he plain error doctrine is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly." (Internal quotation marks omitted.) *State* v. *Sease*, 147 Conn. App. 805, 815 n.7, 83 A.3d 1206, cert. denied, 311 Conn. 932, 87 A.3d 581 (2014). On the basis of our review of the record, we conclude that the defendant has not demonstrated an error so obvious that it requires reversal under the plain error doctrine.

## II

The defendant next claims that the trial court's finding that he had violated his probation was erroneous, as the only evidence to support this finding was the 911 recording, which was improperly admitted. The state argues that there was ample evidence to support the trial court's finding. We agree with the state.

As a preliminary matter, we set forth the legal principles and standard of review pertinent to our discussion. "With respect to the evidentiary phase of a revocation proceeding, [t]o support a finding of probation violation, the evidence must induce a reasonable belief that it is more probable than not that the defendant has

violated a condition of his or her probation." (Internal quotation marks omitted.) *State* v. *Megos*, supra, 176 Conn. App. 139. "This court may reverse the trial court's initial factual determination that a condition of probation has been violated only if we determine that such a finding was clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling. . . . A fact is more probable than not when it is supported by a fair preponderance of the evidence." (Internal quotation marks omitted.) *State* v. *Sherrod*, 157 Conn. App. 376, 382, 115 A.3d 1167, cert. denied, 318 Conn. 904, 122 A.3d 633 (2015).

The record reveals sufficient evidence from which the court reasonably could have found that the defendant violated his probation. The state elicited testimony from Higgins, who testified that the defendant called him on June 23, 2015, to tell him that the defendant had gotten into an altercation with the victim and that she had possibly called the police. The state also offered into evidence the victim's medical records describing her swollen, bloody lip and loose teeth. Feliciano testified that she was dispatched to the victim's address following the 911 call; she later interviewed the victim at the hospital and observed her injuries. The court also properly considered the authenticated 911 call, in which the victim identified the defendant as the person who assaulted her. Accordingly, we conclude that it was not clearly erroneous for the court to find that the defendant had violated his probation on the foregoing basis.

### III

The defendant also claims that the court abused its discretion by revoking his probation and imposing an additional three years incarceration. Having already determined that the state presented sufficient evidence to find a violation of probation, we now turn to the dispositional phase of the revocation of probation hearing. In the dispositional phase, "[i]f a violation is found, a court must next determine whether probation should be revoked because the beneficial aspects of probation are no longer being served." (Internal quotation marks omitted.) *State* v. *Faraday*, 268 Conn. 174, 185, 842 A.2d 567 (2004); see also *State* v. *Preston*, 286 Conn. 367, 375–76, 944 A.2d 276 (2008). In making the determination of whether a defendant's probation should be revoked, "the trial court is vested with broad discretion." (Internal quotation marks omitted.) *State* v. *Sherrod*, supra, 157 Conn. App. 382. "In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness

of the court's ruling; reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *Shakir*, supra, 130 Conn. App. 464.

In the dispositional phase of the hearing, the court properly considered the testimony of Higgins, who indicated that he believed that "at [that] time [the defendant] [was] inappropriate for probation," as well as the testimony of the victim, who did not dispute that the defendant had hit her, but requested that he not be punished or convicted. The court also heard testimony concerning the defendant's extensive criminal record and prior probation violations, as well as the defendant's noncompliance with the conditions of his probation.

After consideration of these factors, the court concluded that the defendant was not a suitable candidate for continued probation, stating: "I gave you a pass on the operating under suspension. I gave you a pass on the larceny six. I'm not giving you a pass on this . . . . [The victim] needs to get somebody else to be her boyfriend because you're going to jail because you're a batterer, you're controlling this woman and it's got to stop. . . . You're not a suitable candidate for probation. . . . Maybe you will be, but not right now." On the basis of this record, we conclude that the court did not abuse its discretion in revoking the defendant's probation and sentencing him to a period of incarceration.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In accordance with our policy of protecting the privacy interests of the victims of family violence, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[2] The following exchange occurred when the prosecutor offered the 911 recording into evidence as a full exhibit:

"[The Defendant's Counsel]: I'm going to object, Your Honor, for lack of foundation.

"The Court: Okay. State's position on the objection?

"[The Prosecutor]: State's position is that the markings on the item one for identification correspond to the same file number. Whether or not this witness has personal knowledge of the call is not the issue, it's whether or not it can be authenticated. And I think that 911 calls traditionally [are] allowed into evidence. And I cite *State* v. *Shakir*, 130 Conn. App. [458, 22 A.3d 1285, cert. denied, 302 Conn. 931, 28 A.3d 345 (2011)] . . . . It was a violation of probation hearing in which the state sought to introduce . . . a video interview of the minor complainant . . . claiming that [the tape] constituted reliable hearsay for the less rigid evidentiary standards in violation of probation hearings. The court allowed the video to be entered as evidence, again acknowledging that strict admissibility rules do not apply during violation of probation hearings, and indicated it would allow it for what it was, the victim's statement of the complaint. So, I think under those grounds, the state . . . can introduce it.

"The Court: So, this 096 number, is that a unique number that just applies to that case?

"[Feliciano]: Yes, sir.

"The Court: Okay, so if you went on a different call, it would have a different number?

"[Feliciano]: Every call has a different number.

"The Court: Okay. I'm going to overrule the objection. I think the unique

file number is sufficient to authenticate it for this case. So, the exhibit number one is admitted as a full exhibit for this hearing.''

[3] The defendant also claims that the court improperly admitted the 911 recording into evidence because it was unreliable and uncorroborated hearsay. Our review of the record indicates that the 911 recording was admitted after the defendant objected to its admission solely on the basis of a ''lack of foundation.'' Both the state and the court understood the defendant's objection as pertaining to the authenticity of the recording. In denying a motion for articulation that the defendant filed during the pendency of this appeal, which requested, inter alia, that the court specify the evidence underlying the conclusion that the 911 tape was admitted as reliable hearsay, the court stated that ''[l]ack of authentication was the only ground advanced in support of the [defendant's] objection to the admission of the 911 tape.''

The standard of review for a claim alleging an improper evidentiary ruling at trial is well settled. Appellate courts are ''not bound to consider claims of law not made at the trial. . . . In order to preserve an evidentiary ruling for review, trial counsel must object properly. . . . In objecting to evidence, counsel must properly articulate the basis of the objection so as to apprise the trial court of the precise nature of the objection and its real purpose, in order to form an adequate basis for a reviewable ruling. . . . Once counsel states the authority and ground of [the] objection, any appeal will be limited to the ground asserted.'' (Internal quotation marks omitted.) *State* v. *Jorge P.*, 308 Conn. 740, 753, 66 A.3d 869 (2013). We conclude that because the defendant did not make a hearsay objection at trial, his hearsay claim is not preserved, and we decline to review it.

[4] This court has held that a defendant's due process claim is unpreserved where the defendant never argued to the trial court that it was required to balance his interest in cross-examining the victim against the state's good cause for not calling the victim as a witness. See *State* v. *Polanco*, supra, 165 Conn. App. 571; see also *State* v. *Shakir*, supra, 130 Conn. App. 465.

To the extent that the defendant's argument suggests that our holdings in *Shakir* and *Polanco* should be overruled as conflicting with United States and Connecticut Supreme Court precedent, that is not within the province of a three judge panel of the Appellate Court. We note that ''this court's policy dictates that one panel should not, on its own, [overrule] the ruling of a previous panel. The [overruling] may be accomplished only if the appeal is heard en banc.'' (Internal quotation marks omitted.) *Diaz* v. *Commissioner of Correction*, 125 Conn. App. 57, 68 n.9, 6 A.3d 213 (2010), cert. denied, 299 Conn. 926, 11 A.3d 150 (2011).

--------------------------------