******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* TIMOLYN DUNBAR
## (AC 40924)

DiPentima, C. J., and Alvord and Flynn, Js.

*Syllabus*

The defendant, who had been on probation in connection with her conviction of the crimes of sale of narcotics and failure to appear in the first degree, appealed to this court from the judgment of the trial court finding her in violation of her probation. During her probation, the defendant was arrested in connection with her alleged sale of narcotics to a confidential informant. H, a police detective and member of a narcotics task force, arranged for the confidential informant to make a controlled purchase of crack cocaine. During the transaction, H and other task force members kept the informant under constant surveillance. From a distance of 100 feet, H observed a woman approach the confidential informant and engage in a hand-to-hand drug transaction. As the seller walked away, she approached H's location, walking past him at a distance of approximately five feet. The confidential informant later provided H with a written statement about the drug transaction and told H the name by which the seller had identified herself. After learning the possible identity of the seller from a fellow police officer, H entered the information into a probation database, obtained a photograph of the defendant and immediately identified her as the seller. During the evidentiary phase of the violation of probation hearing, H identified the defendant in court as the seller of the crack cocaine. H also testified as to the reliability of the confidential informant and the details of the drug transaction, including how the seller had identified herself to the informant. The trial court also admitted, without objection, the photograph of the defendant from the probation database. At the conclusion of the hearing, the trial court found that the defendant had violated the condition of her probation that she not violate any criminal law of the United States or this state. On the defendant's appeal to this court, *held*:

1. The trial court's finding that the defendant violated her probation was not clearly erroneous and was supported by sufficient evidence and testimony in the record; that court properly relied on and was free to credit H's testimony regarding the drug transaction and his identification of the defendant as the seller of the crack cocaine, as the weight to be given to the evidence and credibility determinations were solely within the province of the court as the trier of fact.

2. The record was inadequate to review the defendant's unpreserved claim that her right to due process was violated because the trial court failed to conduct an analysis pursuant to *Neil* v. *Biggers* (409 U.S. 188) concerning the reliability of H's out-of-court identification of the defendant, which was based on the photograph of the defendant that H had obtained from the probation database: the defendant did not move to suppress or object to the admission of the subject photograph, or ask the court to conduct an analysis pursuant to *Neil*, and, therefore, the trial court did not make any factual findings concerning the suggestiveness of the identification procedure or the reliability of the out-of-out identification by H, which rendered the record inadequate for review of the claim pursuant to *State* v. *Golding* (213 Conn. 233); moreover, because the defendant's due process challenge to the out-of-court identification was not reviewable, her derivative claim that H's in-court identification of her violated her right to due process because it was irreparably tainted by the state's use of the unnecessarily suggestive out-of-court identification procedure necessarily failed as well.

3. This court declined to review the defendant's unpreserved claim that her due process right to confront an adverse witness was violated when H testified at the violation of probation hearing about how the seller had identified herself to the confidential informant during the drug transaction, which was based on her claim that the trial court had failed to balance her interest in confronting the confidential informant against the state's reasons for not producing the informant at the hearing and the reliability of the proffered hearsay; at the hearing, the defendant did

not object to that testimony or specifically argue that the identification violated her due process right as a result of the inability to confront the adverse witness, nor did she request that the trial court conduct a balancing test pursuant to *State* v. *Shakir* (130 Conn. App. 458), and, therefore, she failed to sustain her burden of establishing an adequate record for review of her unpreserved claim pursuant to *State* v. *Golding* (213 Conn. 233).

Argued January 10—officially released March 19, 2019

*Procedural History*

Information charging the defendant with violation of probation, brought to the Superior Court in the judicial district of Fairfield, geographical area number two, where the court, *Holden, J.*, denied the defendant's motion for disclosure of the identity of a confidential informant; thereafter, the matter was tried to the court; judgment finding the defendant in violation of probation, from which the defendant appealed to this court. *Affirmed.*

*David B. Bachman*, assigned counsel, for the appellant (defendant).

*Brett R. Aiello*, special deputy assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, and *Nicholas J. Bove, Jr.*, senior assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, C. J. The defendant, Timolyn Dunbar, appeals from the judgment of the trial court finding her in violation of her probation pursuant to General Statutes § 53a-32. On appeal, the defendant claims that (1) the court improperly found a violation of probation on the basis of insufficient evidence, (2) her right to due process was violated by the identification procedures used in this case and (3) her right to due process was violated when the court denied her the right to confront an adverse witness. We affirm the judgment of the trial court.

The record reveals the following facts and procedural history. On December 2, 2011, the defendant was sentenced to fifteen years of incarceration, execution suspended after three years, and three years of probation following her guilty plea and conviction for selling narcotics in violation of General Statutes § 21a-277 (a) and failure to appear in the first degree in violation of General Statutes § 53a-172. The defendant was released from the custody of the Commissioner of Correction on February 14, 2014, and signed her conditions of probation five days later. These conditions included the standard requirement that the defendant not violate any criminal law of the United States or Connecticut.

In 2015, Mark Heinmiller, a detective with the Westport Police Department, was a member of the Southwest Narcotics Task Force (task force).[1] On December 10, 2015, Heinmiller spoke with a confidential informant and set up a controlled purchase of crack cocaine. Heinmiller personally had used this confidential informant approximately thirty times in the past and described this individual as "proven and very reliable."

Later that day, Heinmiller and other members of the task force observed the defendant approach the confidential informant in the area of Park Avenue and Olive Street in Bridgeport. The defendant provided the confidential informant with crack cocaine in exchange for money. The defendant then left the area, coming within five feet of Heinmiller as he conducted his surveillance. The confidential informant later provided Heinmiller with a written statement about the drug sale. Heinmiller also noted that the confidential informant had told him that the seller of the crack cocaine identified herself as "Timberlyn" or "Timberland."

At a later date, one of the officers who had participated in the surveillance of this controlled drug purchase attended a meeting of the task force. At this meeting, he informed the other members that the person who had sold illegal drugs to the confidential informant went by the name of "Timberlyn" or "Timberland."[2] Other officers suggested that this person could have been the defendant. Following the meeting, Heinmiller entered the defendant's name into a "proba-

tion database" and, using a photograph contained therein, identified her as the seller of the crack cocaine to the confidential informant.

Heinmiller prepared an arrest warrant for the defendant and executed it in March, 2016. The defendant subsequently spoke with Heinmiller. She told him that she could not recall the events of December 10, 2015, and that she was "using drugs" at that time.

The state subsequently charged the defendant with violating her probation pursuant to § 53a-32. The court, *Holden, J.*, found that the defendant had violated the conditions of her probation by violating the criminal laws of this state or the United States.[3] It further ordered that the defendant continue on probation and that the original sentence remain in effect. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court improperly found a violation of probation on the basis of insufficient evidence. Specifically, she argues that she was identified as the seller of the crack cocaine "entirely on unreliable hearsay from an unknown confidential informant related in court by a law enforcement officer."[4] The state counters that the court properly relied on Heinmiller's testimony regarding his observations of the drug sale and his identification of the defendant as the seller of the crack cocaine to support its conclusion that she had violated her probation. We agree with the state.

As an initial matter, we set forth the relevant legal principles and our standard of review. "[T]he purpose of a probation revocation hearing is to determine whether a defendant's conduct constituted an act sufficient to support a revocation of probation . . . rather than whether the defendant had, beyond a reasonable doubt, violated a criminal law. The proof of the conduct at the hearing need not be sufficient to sustain a violation of a criminal law. . . . Thus, *a probation violation need be proven only by a preponderance of the evidence.*" (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Megos*, 176 Conn. App. 133, 139, 170 A.3d 120 (2017).

A violation of probation hearing is comprised of an evidentiary phase and dispositional phase. *State* v. *Preston*, 286 Conn. 367, 375–76, 944 A.2d 276 (2008). "In the evidentiary phase, [a] factual determination by a trial court as to whether a probationer has violated a condition of probation must first be made. . . . In the dispositional phase, [i]f a violation is found, a court must next determine whether probation should be revoked because the beneficial aspects of probation are no longer being served." (Internal quotation marks omitted.) *State* v. *Fletcher*, 183 Conn. App. 1, 8, 191 A.3d 1068, cert. denied, 330 Conn. 918, 193 A.3d 1212 (2018);

*State* v. *Megos*, supra, 176 Conn. App. 139.

"With respect to the evidentiary phase of a revocation proceeding, [t]o support a finding of probation violation, the evidence must induce a reasonable belief that it is more probable than not that the defendant has violated a condition of his or her probation. . . . This court may reverse the trial court's initial factual determination that a condition of probation has been violated only if we determine that such a finding was clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling." (Citation omitted; internal quotation marks omitted.) *State* v. *Tucker*, 179 Conn. App. 270, 282–83, 178 A.3d 1103, cert. denied, 328 Conn. 917, 180 A.3d 963 (2018); see also *State* v. *Maurice M.*, 303 Conn. 18, 26–27, 31 A.3d 1063 (2011).

In the present case, Heinmiller arranged for the confidential informant to make a controlled purchase of crack cocaine on December 10, 2015. After placing the order, the confidential informant proceeded to the area of Park Avenue and Olive Street to obtain the drugs. Heinmiller, along with other members of the task force, kept the confidential informant under constant surveillance. From a distance of 100 feet, Heinmiller observed a woman approach the confidential informant and engage in a hand-to-hand drug transaction. As the seller walked away, she approached Heinmiller's location, walking past him at a distance of approximately five feet.

After learning the possible identity of the seller from a fellow officer, Heinmiller entered the information into a database, obtained a photograph of her and "immediately identified her as [the] suspect." Heinmiller also identified the defendant as the seller at the violation of probation hearing.

We cannot conclude that the evidence was insufficient to support the court's finding that the defendant had violated her probation. The court was free to credit Heinmiller's observations and identifications. On the basis of the evidence presented at the violation of probation hearing, the court's finding was not clearly erroneous. See, e.g., *State* v. *Shakir*, 130 Conn. App. 458, 468–69, 22 A.3d 1285, cert. denied, 302 Conn. 931, 28 A.3d 345 (2011). To the extent that the defendant contends that we should disregard Heinmiller's identification, we simply note that the weight to be given to the evidence and credibility determinations are decided solely by the trier of fact. Id., 469. This claim, therefore, must fail.

## II

The defendant next claims that her right to due process was violated by the identification procedures used in this case. Specifically, the defendant argues that the court failed to perform the analysis of the reliability of the out-of-court identification pursuant to *Neil* v. *Biggers*, 409 U.S. 188, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972),[5] and that, as a result, her federal right to due process was violated.[6] She further contends that the in-court identification by Heinmiller violated her right to due process because it was "irreparably tainted" by the use of an unnecessarily suggestive out-of-court identification procedure.[7] The state counters that the defendant failed to preserve her claim pertaining to the out-of-court identification and that the record is inadequate to review it under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). Finally, the state asserts that the defendant's derivative claim regarding the in-court identification necessarily fails if we decline to review the merits of the due process challenge to the out-of-court identification. See, e.g., *State* v. *Harris*, 330 Conn. 91, 113–14, 191 A.3d 119 (2018). We agree with the state.

The following facts are necessary for our discussion. As we previously stated, Heinmiller had observed the controlled narcotics purchase from a distance of 100 feet and viewed the seller as she came within five feet of his location following the transaction. Using information from the confidential informant and other members of the task force, he learned the possible name of the seller. He entered this name into a probation database, which then displayed a photograph. He "immediately identified her as [the seller he had observed on December 10, 2015]." The state offered this photograph from the probation database for admission into evidence. In the absence of an objection from the defendant, the court admitted this photograph into evidence. Heinmiller previously had identified the defendant in the courtroom at the violation of probation hearing.

In her appellate brief, the defendant does not claim to have objected to the admission of the photograph into evidence and acknowledges that she did not specifically request the court to conduct an analysis pursuant to *Neil* v. *Biggers*, supra, 409 U.S. 188. Instead, she requests *Golding* review of her due process claim. Under this familiar test, "[a] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harm-

lessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Emphasis in original; internal quotation marks omitted.) *State* v. *Davis*, 186 Conn. App. 385, 393–94,     A.3d     (2018), cert. denied, 330 Conn. 965,     A.3d     (2019); see also *State* v. *Brown*, 185 Conn. App. 806, 810, 198 A.3d 687 (2018) (defendant bears burden of providing adequate record).

The state argues that this issue is controlled by *State* v. *Collins*, 124 Conn. App. 249, 5 A.3d 492, cert. denied, 299 Conn. 906, 10 A.3d 523 (2010). In that case, the defendant claimed, inter alia, that a pretrial identification procedure was unnecessarily suggestive, thus tainting an in-court identification at his violation of probation hearing. Id., 251–52. In declining to review this unpreserved claim, we stated: "Defense counsel did not make a motion to suppress the identification or object to the admission of [the pretrial] identification, and no evidentiary hearing was held regarding the evidence. Consequently, the court did not make any factual findings or legal conclusions concerning the suggestiveness of the procedures employed or the reliability of [the] in-court identification. Without such findings, the record is inadequate for our review. See *State* v. *Necaise*, 97 Conn. App. 214, 219, 904 A.2d 245 (resolution of whether pretrial identification procedure violates defendant's due process rights requires factfinding function of trial court), cert. denied, 280 Conn. 942, 912 A.2d 478 (2006); *State* v. *Sargent*, 87 Conn. App. 24, 30, 864 A.2d 20, cert. denied, 273 Conn. 912, 870 A.2d 1082 (2005)." *State* v. *Collins*, supra, 256–57.

Similarly, in the present case, the court, in the absence of a motion to suppress or challenge to the admission into evidence of the photograph from the probation database, did not make factual findings concerning the out-of-court identification by Heinmiller. As a result of the evidentiary lacuna, the record is inadequate, and the defendant's claim regarding the out-of-court identification fails to satisfy the first prong of *Golding*. Additionally, the defendant's dependent claim regarding the in-court identification also must fail.

III

The defendant finally claims that the court violated her right to due process when it denied her the right to confront an adverse witness, namely, the confidential informant. Specifically, she contends that the court should have concluded that her strong interest in confrontation outweighed the state's interest in protecting the identity of informants.[8] The state counters that the record is inadequate to review this due process claim. We agree with the state.

The following additional facts are necessary for our discussion. Prior to the start of the violation of probation hearing, the defendant filed a motion for disclosure of the identity of the confidential informant. In her motion, dated January 17, 2017, the defendant argued that the confidential informant was a necessary witness because that individual was "the only other person that was present during the alleged transaction." She further posited that the testimony of the confidential informant would be beneficial to her, was material to the issues, and would enable her to prepare an adequate defense. In support of her motion, the defendant relied on *Roviaro* v. *United States*, 353 U.S. 53, 61, 77 S. Ct. 623, 1 L. Ed. 2d 639 (1957)[9] and *State* v. *Hernandez*, 254 Conn. 659, 759 A.2d 79 (2000).[10]

On February 22, 2017, prior to the start of the evidentiary phase of the violation of probation hearing, the court heard argument regarding the motion for disclosure. Defense counsel emphasized the ability of the confidential informant to identify the seller of the crack cocaine. In response, the state questioned whether the due process concerns raised by the defendant applied in a violation of probation hearing. Defense counsel countered that even in a violation of probation hearing, the defendant was entitled to due process, which included the right to confront and cross-examine the witnesses against her, including the confidential informant.[11]

After hearing from the parties, the court noted that it was not deciding the defendant's guilt with respect to the underlying charges, but, rather, whether she had violated the terms of her probation. It then stated: "Evidentiary concerns that are presented in a hearing [concerning a] violation of probation are such that even hearsay is admitted and the question becomes the reliability of the hearsay offer and the rules of evidence are in fact in terms of violation of probation proceeding, quite relaxed in essence and . . . at this point . . . your request . . . for the state to disclose . . . the name of the confidential informant is denied."

During the evidentiary phase of the violation of probation hearing, Heinmiller testified that he personally had worked with this confidential informant a minimum of thirty times and characterized this individual as "proven" and "very reliable." Heinmiller also stated that disclosure of the confidential informant's identity would jeopardize both future police investigations and his or her physical safety. At some point during Heinmiller's testimony, the state offered a written statement from the confidential informant into evidence. The court admitted this statement into evidence, over the defendant's objection that it constituted a due process violation.[12]

Although the defendant directly challenged the denial

of her motion for disclosure of the identity of the confidential informant before the trial court, citing *Roviario* and *Hernandez*, she has not done so in this appeal. Instead, the defendant has enlarged her due process claim beyond her objection to the admission of the confidential informant's written statement to include the name of the seller. Moreover, she has amalgamated her due process claim with the denial of her motion.

Our focus, therefore, is directed to the legal issue presented in the defendant's appellate brief, that is, whether her due process right to confront an adverse witness in a violation of probation hearing was violated when Heinmiller testified that he had learned how the seller had identified herself to the confidential informant during the illicit drug transaction. Specifically, the defendant argues in her appellate brief that the court failed to balance her interest in confronting the confidential informant against the state's reasons for not producing the confidential informant at the hearing and the reliability of the proffered hearsay. See, e.g., *State* v. *Giovanni P.*, 155 Conn. App. 322, 335, 110 A.3d 442, cert. denied, 316 Conn. 909, 111 A.3d 883 (2015). At the hearing, the defendant did not object to this testimony, nor did she specifically argue that this identification violated her due process right as a result of the inability to confront the adverse witness. The trial court, therefore, was not provided fair notice of claim articulated to this court. See *State* v. *Jorge P.*, 308 Conn. 740, 753–54, 66 A.3d 869 (2013); *State* v. *McKethan*, 184 Conn. App. 187, 193 n.2, 194 A.3d 293, cert. denied, 330 Conn. 931, 194 A.3d 779 (2018). We recently stated: "This court has held that a defendant's due process claim is unpreserved where the defendant never argued to the trial court that it was required to balance his interests in cross-examining [an adverse witness] against the state's good cause for not calling the [adverse witness] as a witness." *State* v. *Tucker*, supra, 179 Conn. App. 278 n.4. Accordingly, we conclude that this issue was not preserved for appellate review.

The defendant requests that we review her constitutional claim pursuant to the *Golding* doctrine. We conclude that the record is inadequate, and, thus, this claim fails to satisfy the first prong of *Golding*. See, e.g., *State* v. *Medina*, 170 Conn. App. 609, 613, 155 A.3d 285 (unless defendant has demonstrated that record is adequate for appellate review, appellate tribunal will not consider merits of defendant's claim), cert. denied, 325 Conn. 914, 159 A.3d 231 (2017).

We begin our analysis by setting forth the limited due process rights afforded to a defendant in a violation of probation hearing. "Probation revocation proceedings fall within the protections guaranteed by the due process clause of the fourteenth amendment to the federal constitution . . . . Probation itself is a conditional liberty and a privilege that, once granted, is a constitution-

ally protected interest . . . . The revocation proceeding must comport with the basic requirements of due process because termination of that privilege results in a loss of liberty." (Internal quotation marks omitted.) *State* v. *Andaz*, 181 Conn. App. 228, 232–33, 186 A.3d 66, cert. denied, 329 Conn. 901, 184 A.3d 1214 (2018). "[T]he minimum due process requirements for revocation of [probation] include written notice of the claimed [probation] violation, disclosure to the [probationer] of the evidence against him, the opportunity to be heard in person and to present witnesses and documentary evidence, the right to confront and cross-examine adverse witnesses in most instances, a neutral hearing body, and a written statement as to the evidence for and reasons for [a probation] violation. . . . Despite that panoply of requirements, a probation revocation hearing does not require all of the procedural components associated with an adverse criminal proceeding." (Internal quotation marks omitted.) *State* v. *Barnes*, 116 Conn. App. 76, 79, 974 A.2d 815, cert. denied, 293 Conn. 925, 980 A.2d 913 (2009); see also *State* v. *Giovanni P.*, supra, 155 Conn. App. 334–35.

This court, on several occasions, has considered an unpreserved due process claim that originated in the inability to confront and cross-examine an adverse witness in a violation of probation hearing. For example, in *State* v. *Shakir*, supra, 130 Conn. App. 468, this court noted that the right to confront a witness in a violation of probation hearing is not absolute. Furthermore, the constitutional requirements for such a hearing were codified in rule 32.1 of the Federal Rules of Criminal Procedure, which provides that a defendant is entitled to "question any adverse witness unless the court determined that the interest of justice does not require the witness to appear . . . ." (Internal quotation marks omitted.) Id., 467. Stated differently, "the court should balance, on the one hand, the defendant's interest in confronting the [witness], against, on the other hand, the government's reasons for not producing the witness and the reliability of the proffered hearsay." (Internal quotation marks omitted.) Id., 468. This court ultimately concluded that the reasons for not producing the adverse witness were not established in the proceeding before the trial court, and, therefore, the record was inadequate for *Golding* review. Id. As a result, this court declined to consider the merits of the defendant's claim. Id., 466.

More recently, in *State* v. *Tucker*, supra, 179 Conn. App. 281, this court expressly stated that "where the defendant does not request that the court conduct the *Shakir* balancing test or make a good cause finding, the record is inadequate for review of a due process claim under the first prong of *Golding*." In *Tucker*, we reasoned that the defendant had failed to sustain his burden of establishing an adequate record for *Golding* review of his due process claim that he was not able

to confront and cross-examine an adverse witness in a violation of probation hearing where (1) the defendant had failed to request the court to conduct the *Shakir* balancing test, (2) the state had no notice of the due process claim and, therefore, did not present its reasons for not producing the witness at the hearing, (3) the record was silent as why a 911 recording was used in place of the witness and (4) the record was silent as to whether the reasons for not producing the witness amounted to good cause. Id. We concluded that "[u]nder these circumstances, the state was not responsible for the gap in the evidence, and it would be patently unfair to address the defendant's due process claim on the basis of this record." Id., 281–82; see also *State* v. *Polanco*, 165 Conn. App. 563, 575–76, 140 A.3d 230, cert. denied, 322 Conn. 906, 139 A.3d 708 (2016).

In the present case, the defendant failed to request that the trial court conduct the *Shakir* balancing test. We therefore conclude, as we did in *Tucker*, *Polanco* and *Shakir*, that the defendant failed to sustain her burden of establishing an adequate record for review, as required by the first prong of *Golding*. Accordingly, we decline to consider the merits of this unpreserved appellate claim.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The court did not set forth a detailed memorandum of decision specifically listing all of the facts set forth herein. On two occasions, however, it specifically stated that Heinmiller was a credible witness.

[2] In his report setting forth the details of the drug sale, Heinmiller indicated that the confidential informant had told him that the seller of the drugs identified herself as "Timberlyn" or "Timberland." This report was not admitted into evidence at the violation of probation hearing.

[3] The record does not contain a transcript of the court's decision, as is required by Practice Book § 64-1 (a). Additionally, the defendant failed to take any steps to obtain a decision in compliance with our rules of practice. "In some cases in which the requirements of Practice Book § 64-1 (a) have not been followed, this court has declined to review the claims raised on appeal due to the lack of an adequate record." *Emeritus Senior Living* v. *Lepore*, 183 Conn. App. 23, 25 n.2, 191 A.3d 212 (2018).

In the present case, the ability of this court to review the claims raised by the defendant in this appeal has not been hampered by the failure to comply with our rules of practice. Nevertheless, we remind counsel of the obligation to provide this court with a signed transcript or a written memorandum of decision in accordance with Practice Book § 64-1. See *State* v. *Gansel*, 174 Conn. App. 525, 526 n.1, 166 A.3d 904 (2017).

[4] The defendant also contends that Heinmiller's identification was "tainted by the unnecessarily suggestive procedure utilized by the police" and, therefore, was unreliable and cannot form the basis for the finding that she violated her probation. As we conclude in part II of this opinion, the record is inadequate to review the defendant's claim regarding the identification procedures used in this case. Accordingly, this argument regarding the sufficiency of the evidence also fails.

[5] Our Supreme Court recently stated: "The test for determining whether the state's use of an unnecessarily suggestive identification procedure violates a defendant's federal due process rights derives from the decisions of the United States Supreme Court in *Neil* v. *Biggers*, [supra, 409 U.S. 196–97], and *Manson* v. *Brathwaite*, 432 U.S. 98, 113–14, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977). As the court explained in *Brathwaite*, fundamental fairness is the standard underlying due process, and, consequently, reliability is the linchpin in determining the admissibility of identification testimony . . . . Thus, *the required inquiry is made on an ad hoc basis and is two-pronged:*

*first, it must be determined whether the identification procedure was unnecessarily suggestive; and second, if it is found to have been so, it must be determined whether the identification was nevertheless reliable based on examination of the totality of the circumstances.*" (Citation omitted; emphasis added; internal quotation marks omitted.) *State* v. *Harris*, 330 Conn. 91, 101, 191 A.3d 119 (2018).

[6] As noted by the state, subsequent to the filing of the defendant's appellate brief, our Supreme Court issued its decision in *State* v. *Harris*, 330 Conn. 91, 191 A.3d 119 (2018). In that case, the defendant argued, inter alia, that our Supreme Court should reject the framework of *Neil* v. *Biggers*, supra, 409 U.S. 199–200, for purposes of determining whether article first, § 8, of the Connecticut constitution requires suppression of out-of-court and in-court witness identifications. *State* v. *Harris*, supra, 114–15. After applying the factors established in *State* v. *Geisler*, 222 Conn. 672, 684–85, 610 A.2d 1225 (1992), it concluded that our state constitution afforded greater protection than the minimum standard set forth in the federal constitution. *State* v. *Harris*, supra, 116.

[7] See, e.g., *State* v. *Dickson*, 322 Conn. 410, 420, 141 A.3d 810 (2016) (both initial identification, if unduly suggestive, and in-court identification may be excluded if improper procedure in former created substantial likelihood of misidentification), cert. denied,     U.S.     , 137 S. Ct. 2263, 198 L. Ed. 2d 713 (2017).

[8] The defendant does not argue that there was a violation of her constitutional rights under the confrontation clause of the sixth amendment to the United States constitution but relies solely on the due process clause of the fourteenth amendment.

[9] "In *Roviaro* v. *United States*, [supra, 353 U.S. 53], the United States Supreme Court had occasion to define the nature and scope of the informant's privilege. What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law. . . . The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation. . . .

"*Roviaro* established a test for assessing challenges to the applicability of the informant's privilege. This test involves the balancing of two competing interests: (1) the preservation of the underlying purpose of the privilege; and (2) the fundamental requirements of fairness. . . . The underlying purpose of the privilege is to protect the public interest in the flow of information to law enforcement officials. The fundamental requirements of fairness comprise the defendant's right to a fair trial, including the right to obtain information relevant and helpful to a defense. . . . Whether [disclosure is warranted depends] on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." (Internal quotation marks omitted.) *State* v. *Crespo*, 145 Conn. App. 547, 568–69, 76 A.3d 664 (2013), aff'd, 317 Conn. 1, 115 A.3d 447 (2015).

[10] In *State* v. *Hernandez*, supra, 254 Conn. 665, our Supreme Court noted that the determination of whether the identity of a confidential informant should be disclosed to a defendant lies within the discretion of the trial court. It also noted that *Roviaro* involved the application of federal law. Id., 666 n.7; see also *State* v. *Richardson*, 204 Conn. 654, 658, 529 A.2d 1236 (1987) (*Roviaro* did not rest on constitutional grounds).

[11] Specifically, defense counsel stated: "At a violation of probation hearing, the defendant is still afforded due process based on the fourteenth amendment of the [United States] constitution and the right to confront and cross-examine witnesses, so I do think that the ability to do that to the complaining witness is applicable here."

[12] Defense counsel objected as follows: "I'm not objecting based on hearsay. I'm objecting based on [the defendant's] fourteenth amendment constitutional right to due process. She does have . . . the right to confront the witnesses against her. That's a constitutional right. Due process is implicated in a violation of probation hearing."